2015 UT App 189

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
ISAAC LORENZO,
Defendant and Appellant.

Memorandum Decision
No. 20140152-CA
Filed August 6, 2015

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
No. 131500545

Matthew D. Carling, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Memorandum
Decision, in which JUDGES JAMES Z. DAVIS and JOHN A. PEARCE
concurred.

VOROS, Judge:

¶1     With his two young daughters in the car, Isaac Lorenzo led police officers on a high-speed chase through Cedar City. He was convicted of failure to respond to an officer's signal, a third degree felony; reckless endangerment, a class A misdemeanor; reckless driving, a class B misdemeanor; and driving on a suspended or revoked driver license, a class B misdemeanor. Lorenzo contends that insufficient evidence supported his reckless-endangerment, reckless-driving, and suspended-license convictions and that his trial counsel rendered constitutionally ineffective assistance. We affirm.

BACKGROUND[1]

¶2     Recognizing Lorenzo from prior encounters, a police officer stopped him for outstanding warrants and for driving with an invalid driver license. During the stop, the police officer smelled alcohol on Lorenzo's breath and the two "started talking about the odor of alcoholic beverage." In response, Lorenzo took off, leading the police officer on a high-speed chase through Cedar City.

¶3     Lorenzo sped through a residential neighborhood, ran stop signs, sped past multiple cars, and crossed in front of oncoming traffic and onto the freeway. Lorenzo then exited the freeway, turned through a busy intersection, and cut off cars as he sped toward the north-bound freeway. Lorenzo then entered the north-bound freeway, weaving in and out of traffic. During the chase, the police officer chased Lorenzo at speeds ranging from 90 to 110 miles per hour. The police officer called for backup, and another police officer joined the chase. Lorenzo exited the freeway again, ran another red light, and sped through a business district before stopping and surrendering in his residential neighborhood. Lorenzo's two daughters stepped out of the car, "terrified."

¶4     At trial, Lorenzo admitted that "he was out of control" and that he "was driving probably very fast—a little fast." He acknowledged that during the chase his "daughters were nervous" but that they were not in danger, because he "always drove well."

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted). "We present conflicting evidence only as necessary to understand issues raised on appeal." *Id.*

¶5    The parties agreed to a bifurcated trial. A jury tried Lorenzo for failure to respond to an officer's signal, reckless driving, and reckless endangerment. The jury found Lorenzo guilty of all charges. Lorenzo did not move for a directed verdict or challenge the sufficiency of the evidence supporting his convictions.

¶6    The trial court tried Lorenzo for driving on a suspended or revoked driver license. At the bench trial, the State called the police officer and a hearing officer from the Division of Motor Vehicles (DMV) to testify. The DMV officer testified that Lorenzo did not have a valid driver license, that he could not get a valid driver license, and that his driving privileges "are restricted . . . so he cannot have any alcohol in his system when he drives." The police officer testified that Lorenzo's driver license was "suspended or revoked for alcohol." After concluding that the alcohol restriction could only have resulted from a conviction for driving under the influence (DUI)—an enhancement to the driver-license charge—the trial court found Lorenzo guilty of driving on a suspended or revoked driver license, a class B misdemeanor.

ISSUES ON APPEAL

¶7    Lorenzo asserts three claims of error on appeal. First, he contends that insufficient evidence supported his jury-trial convictions for reckless driving and reckless endangerment.

¶8    Second, Lorenzo contends that insufficient evidence supported his bench-trial conviction for driving on a suspended or revoked driver license.

¶9    Finally, Lorenzo contends that his trial counsel rendered constitutionally ineffective assistance by failing to file a motion to suppress evidence of the initial traffic stop on the ground that reasonable suspicion did not support the stop.

ANALYSIS

I. Insufficient Evidence Claims

A.     Reckless Driving and Reckless Endangerment

¶10     Lorenzo first contends that insufficient evidence supported his jury-trial convictions for reckless driving and reckless endangerment. He argues that his "driving did not amount to willful and wanton nor did it create a situation that was a substantial risk" of serious bodily harm or death, because, "[f]or the circumstances, Lorenzo did what he could to keep his daughters and everyone else safe." The State responds that Lorenzo failed to preserve this issue for appeal and that, in any event, "the evidence was sufficient to support the jury's verdicts for both reckless driving and reckless endangerment."

¶11     Under the preservation doctrine, a sufficiency claim "not raised before the trial court cannot be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. "[T]o preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (citation and internal quotation marks omitted). Because the trial court has no duty to examine the "sufficiency of the evidence unless the defendant moves the court to do so or there is an 'apparent' insufficiency, the preservation rule ensures that the issue will be brought to the trial court's attention and the trial court will have the opportunity to address the issue." *Holgate*, 2000 UT 74, ¶ 16. The preservation rule "prevent[s] a defendant from deliberately foregoing relief below based on the sufficiency of the evidence, hoping that a remedial evidentiary defect might not be perceived and corrected, thus strategically facilitating the defendant's chance for a reversal on appeal." *Id.* We will not consider an unpreserved claim on appeal unless the appellant demonstrates that the trial court committed plain error, shows that exceptional

circumstances exist, or asserts ineffective assistance of counsel. *State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867.

¶12 Lorenzo has not preserved his sufficiency claim and does not raise any exception to the preservation rule on appeal. He instead argues that *State v. Holgate*, 2000 UT 74, 10 P.3d 346, "did not determine that the 'plain error' exception was required to reach a sufficiency challenge to a jury verdict." In *Holgate*, our supreme court noted that the Utah Code provides that "the trial court 'shall' grant relief when the evidence is insufficient, even if a defendant fails to properly raise the issue, but only when the evidentiary defect is 'apparent' to the trial court." *Id.* ¶ 15. From this language, Lorenzo argues that the trial court had "an inherent duty to ensure that the evidence was sufficient, requiring trial court action regardless of preservation." But he raises this argument for the first time in his reply brief. "It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court." *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 (citation and internal quotation marks omitted). Lorenzo's sufficiency claim accordingly fails.[2]

B.     Driving on a Suspended or Revoked Driver License

¶13 Lorenzo next contends that insufficient evidence supported his bench-trial conviction for driving on a suspended or revoked driver license. Lorenzo does not challenge the trial court's finding that he was driving with a suspended license. Instead, he argues that the evidence supported at most a class C

---

2. We note that Lorenzo's sufficiency claim would have failed in any event. Indeed, his appellate counsel effectively conceded the sufficiency argument at oral argument when he stated, "Once that video . . . was shown to the jury, it was over. It was really over."

misdemeanor, not a class B misdemeanor. He argues that because "the statute for driving on a suspended or revoked license calls for various and specific reasons why one has to be revoked or denied in order for someone to be found guilty," it was "inappropriate [for the trial court] to just infer or guess as to why Lorenzo's license was revoked when the statute and the elements listed within it are very specific." The State responds that the trial court had sufficient evidence to conclude that Lorenzo committed a class B, rather than a class C, misdemeanor.

¶14 "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *State v. Gordon*, 2004 UT 2, ¶ 5, 84 P.3d 1167 (alterations in original) (citation and internal quotation marks omitted). "[I]n those instances in which the trial court's findings include inferences drawn from the evidence, we will not take issue with those inferences unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous." *Glew v. Ohio Sav. Bank*, 2007 UT 56, ¶ 18, 181 P.3d 791.

¶15 A person may be convicted of a class C misdemeanor for driving a motor vehicle with a "denied, suspended, disqualified, or revoked" driver license. Utah Code Ann. § 53-3-227(1), (2) (LexisNexis 2010). This offense becomes a class B misdemeanor if the driver's license was denied, suspended, disqualified, or revoked for, among other things, an alcohol-related prior offense. *Id.* § 53-3-227(3) (identifying enhancing alcohol-related prior offenses by Utah Code section numbers).

¶16 At the bench trial, the police officer testified that Lorenzo's driver license had been "suspended or revoked for alcohol," but he did not specify which alcohol violation caused

Lorenzo's license restriction. A DMV hearing officer testified that Lorenzo's driving privileges "are restricted . . . so he cannot have any alcohol in his system when he drives." The trial court and the parties then had the following exchange:

> [Court]: Can I just infer that . . . if someone is alcohol restricted . . . that the only way their license can be alcohol restricted is if they have a prior DUI?
>
> [Prosecutor]: Yes.
>
> . . . .
>
> [Trial Counsel]: [W]e're not in the business of inferring anything here. It needs to be stated specifically . . . .
>
> [Court]: Are there other reasons that [Lorenzo's] license could have been . . . alcohol restricted other than having been convicted of a DUI?
>
> [Trial Counsel]: That I'm aware of, no.
>
> . . . .
>
> I just—when the proof is beyond a reasonable doubt to just simply infer I would argue is taking it a step too far.

On the basis of the testimony and the exchange with the parties, the trial court concluded that a prior DUI triggered Lorenzo's driving restriction:

> [B]ased on . . . what's been presented in terms of argument, and that is that there is no way that he

could be [an] alcohol restricted driver other than to have been convicted of a DUI, then I do find that there is sufficient evidence to find beyond a reasonable doubt that he's been convicted of a DUI and that that's why his license was restricted at the time.

Lorenzo argues that the trial court's inference that a DUI caused his license restriction "was flawed and clearly erroneous" because "[t]here was no evidence presented showing what the alcohol restriction related to and when it was in place."

¶17   "[A] reasonable inference arises when the facts can reasonably be interpreted to support a conclusion that one possibility is more probable than another." *State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096. Here, the court apparently believed that the inference it drew was not only a reasonable inference, but the only reasonable inference from Lorenzo's alcohol-restricted license. Lorenzo did not identify at trial, nor does he identify on appeal, any crime that would result in an alcohol restriction but would not result in an enhancement. In other words, he identifies no competing inference from the evidence before the court. Accordingly, he has not demonstrated that the trial court's finding contravened the clear weight of the evidence.[3]

---

3. A crime may exist that would result in an alcohol restriction but not an enhancement. But "[p]inpointing where and how the trial court allegedly erred is the appellant's burden," not the appellate court's. *GDE Constr., Inc. v. Leavitt*, 2012 UT App 298, ¶ 24, 294 P.3d 567. "An appellate court that assumes that burden on behalf of an appellant 'distorts th[e] fundamental allocation of benefits and burdens.'" *Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶ 24, 263 P.3d 1191 (alteration in original) (quoting
(continued…)

## II. Ineffective-Assistance-of-Counsel Claim

¶18    Finally, Lorenzo contends that his trial counsel rendered constitutionally ineffective assistance by failing to file a motion to suppress evidence of the initial traffic stop on the ground that reasonable suspicion did not support the stop. Lorenzo argues that "[t]here was no sound trial strategy for failing to file a suppression motion on the basis that [the police officer] lacked reasonable suspicion to effectuate the initial traffic stop, which led to all other charges . . . and was thus highly prejudicial." The State responds that because "no Fourth Amendment violation occurred," filing a motion to suppress would have been futile.

¶19    To succeed on his claim of ineffective assistance of counsel, Lorenzo must establish that trial counsel performed deficiently and that counsel's deficient performance resulted in prejudice. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Jones*, 2015 UT 19, ¶ 44, 345 P.3d 1195; *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92. We review claims of ineffective assistance of counsel raised for the first time on appeal for correctness. *State v. Lucero*, 2014 UT 15, ¶ 11, 328 P.3d 841.

¶20    In addition to proving both of the *Strickland* elements, when an ineffective-assistance-of-counsel claim turns on an alleged Fourth Amendment violation, the defendant bears the additional burden of proving that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

---

(…continued)
*State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448). Accordingly, we decline to do so.

¶21 The legality of the initial stop of Lorenzo's vehicle does not control this issue. A "prior illegality by officers does not affect the subsequent arrest of a defendant where there is an intervening illegal act by the suspect." *State v. Griego*, 933 P.2d 1003, 1008 (Utah Ct. App. 1997) (citing *United States v. Bailey*, 691 F.2d 1009, 1016–17 (11th Cir. 1982)); *accord State v. Earl*, 2004 UT App 163, ¶ 23, 92 P.3d 167. Thus, "notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime." *Bailey*, 691 F.2d at 1016–17. "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." *Id*. at 1017.

¶22 This principle applies here. Even if the initial stop was unlawful, Lorenzo's underlying Fourth Amendment claim fails. All of the charges against Lorenzo stemmed from his actions after he fled the scene of the stop. Lorenzo committed separate illegal acts—leading police on a dangerous, high-speed chase on the freeway and through residential and business districts—after the allegedly unlawful stop. Because of Lorenzo's intervening illegal conduct, a motion to suppress challenging the initial stop would have been futile. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. Accordingly, Lorenzo's ineffective-assistance-of-counsel challenge fails.

CONCLUSION

¶23 For the foregoing reasons, Lorenzo's convictions are affirmed.

_____